[No. B034105. Second Dist., Div. Two. May 31, 1989.]

DONALD MILLER, JR., et al., Plaintiffs and Appellants, v. PEPSI-COLA BOTTLING CO., et al., Defendants and Respondents.

**COUNSEL**

Bruce M. Leyden for Plaintiffs and Appellants.

Ross & Hardies, Richard E. Lieberman, Mark N. Woyar, Rintala, Smoot, Jaenicke & Brunswick and Peter C. Smoot for Defendants and Respondents.

## OPINION

**FUKUTO, J.**—Plaintiffs, Donald Miller, Jr. and Sandra Miller, appeal the grant of summary judgment in favor of defendants Pepsi-Cola Bottling Co. and Steven Lawrence.

On April 26, 1984, the Millers filed a complaint against Pepsi and Lawrence alleging that Donald Miller had been wrongfully terminated from his employment with Pepsi. Donald Miller asserted a contract cause of action for breach of an implied-in-fact promise to discharge for good cause only and a cause of action alleging breach of the implied covenant of good faith and fair dealing. Sandra Miller asserted a loss of consortium cause of action. Miller alleged that he began his employment with Pepsi in 1972; for approximately 11 years thereafter, he was lauded with consistent commendations, awards, and promotions for his work; he was assured by corporate personnel that his future was secure if he did a good job; it was related to him that it was not the practice of Pepsi to terminate employees with longevity service and loyalty except for good cause; on or about April 26, 1983, Pepsi breached the oral agreement by terminating him without just cause; and that Lawrence, Miller's supervisor, made the decision to terminate him.

On December 22, 1987, Pepsi and Lawrence filed a motion for summary judgment. In support of the motion, they presented evidence establishing that Miller was hired as a truck driver in May 1972; at that time, he became a member of the Teamsters Union and his employment was governed by the collective bargaining agreement existing between the Teamsters Union and Pepsi; this agreement contained a clause stating that covered union employees could be terminated only for "just cause"; Miller worked as a truck driver and later as a route sales driver for approximately six years; in 1978, Miller was promoted to a sales position; as a result of this promotion he left the Teamsters bargaining unit and was no longer covered by the collective bargaining agreement; Miller continued to work in sales capacities until his termination in 1983; Miller received no written contract when he left his union job and joined the sales staff, nor did he receive any verbal assurances of job security at that time; and that Pepsi had no established policies or procedures governing the termination of sales personnel. Defendants' motion for summary judgment was granted and judgment was entered. This appeal followed.

■ A defendant moving for summary judgment must set forth with particularity competent evidentiary facts sufficient to establish every element necessary to sustain a judgment in his favor. (*IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443, 447 [147 Cal.Rptr. 828].) The pleadings are determinative of what issues are material on a motion for summary

judgment. Therefore, the moving party's declarations or other evidence must be directed to the claims raised in the opposing party's pleadings, and his declarations and evidence must rule out all possible merit in the complaint. (*Ibid.*) The opposing party has no obligation to present evidence countering defendant's claim until defendant has met this initial burden. (*Ibid.*)

While this appeal was pending, *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] was decided. In *Foley,* our Supreme Court held that aside from tortious termination of employment in contravention of public policy, which the parties agree is not involved here, an action for wrongful discharge is purely contractual in nature. The court further held that a discharged employee can sue on a cause of action based on a breach of an "oral" or "implied-in-fact" contract, concluding that the statute of frauds does not bar such a claim.

 The issue in this appeal is whether a triable issue of material fact exists whether there was an "oral" or "implied-in-fact" contract between Pepsi and Miller wherein Pepsi agreed Miller could only be terminated for just cause. Pepsi contends that the grant of summary judgment should be upheld since "the evidence undisputedly establishes that Miller had no enforceable contract of employment with Pepsi-Cola." Miller contends that the *Foley* court decided that the existence, or nonexistence, of an implied-in-fact contract of employment should not be decided as a matter of law but by the trier of fact. Thus, according to Miller, the judgment should be reversed.

The court, in *Foley,* stated: "The absence of an express written or oral contract term concerning termination of employment does not necessarily indicate that the employment is actually intended by the parties to be 'at will,' because the presumption of at-will employment may be overcome by evidence of contrary intent. Generally, courts seek to enforce the actual understanding of the parties to a contract, and in so doing may inquire into the parties' conduct to determine if it demonstrates an implied contract. '[I]t must be determined, as a question of fact, whether the parties acted in such a manner as to provide the necessary foundation for [an implied contract], and evidence may be introduced to rebut the inferences and show that there is another explanation for the conduct.' [Citations.]" (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 677.)

 Some of the factors to be used to determine the existence of an employment agreement include " 'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the

practices of the industry in which the employee is engaged.' [Citations.]" (47 Cal.3d at p. 680.) The "totality of the circumstances determines the nature of the contract. Agreement may be ' "shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances." ' [Citation.]" (*Id.* at p. 681.)

The court, in *Foley,* did not, however, hold that the existence or nonexistence of an implied-in-fact contract of employment must always be decided by a trier of fact and never as a matter of law. It merely rejected the defendant employer's contention that the factors relied on by plaintiff Foley were inadequate as a matter of law to support a promise to discharge for "good cause only." Foley alleged repeated oral assurances of job security and consistent promotions, salary increases and bonuses during the term of employment contributing to his reasonable expectation that he would not be discharged except for good cause.[1] Foley also alleged that the defendant employer maintained written "Termination Guidelines" that set forth express grounds for discharge and a mandatory seven-step pretermination procedure and that Foley, *supra,* 47 Cal.3d understood that the guidelines applied to him. The court stated, "an allegation of breach of written 'Termination Guidelines' implying self-imposed limitations on the employer's power to discharge at will may be sufficient to state a cause of action for breach of an employment contract." (*Foley* at p. 681.) Finally, the court noted that Foley alleged that he supplied the employer independent consideration for his employment contract by promising not to compete or conceal any computer-related information from the employer for one year after termination. Quoting from *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 326 [171 Cal.Rptr. 917], the court stated: "The noncompetition agreement . . . may be probative evidence that 'it is more probable that the parties intended a continuing relationship, with limitations upon the employer's dismissal authority [because the] employee has provided some benefit to the employer, or suffers some detriment, beyond the usual rendition of service.' " (*Foley, supra,* at p. 682.) The court concluded that these allegations, if proved, would be sufficient for a jury to find an implied-in-fact contract sufficient to overcome the presumption of Labor Code section 2922 that an employment having no specified term may be terminated at will.

■ Miller cannot urge as much. It is uncontroverted that Pepsi had no established policies, written or unwritten, governing the termination of sales personnel. Miller cannot claim that he supplied any additional consideration to Pepsi for his employment contract beyond the usual performance of

---

[1] The *Foley* appeal was from the judgment for the defendant following the trial court's sustaining of a demurrer without leave to amend. Plaintiff Foley's alleged facts were assumed to be true.

his job. Nor can he claim that he received repeated oral assurances of job security while employed by Pepsi. The only oral promise occurred at the time he was first hired when he was told "you [will] have a job for the rest of your life, as long as you [do] your job." He was, however, hired as a truck driver and was covered by a collective bargaining agreement which provided that covered employees could be terminated only for "just cause." Miller admits the absence of any oral promise of job security following his advancement to a sales position which was not covered by any collective bargaining agreement.

Basically, the record revealed that all Miller can urge are two promotions and regular salary increases during his eleven years with Pepsi. Promotions and salary increases are natural occurrences of an employee who remains with an employer for a substantial length of time. These factors should not change the status of an "at-will" employee to one dischargeable only for "just cause." We hold that, as a matter of law, Miller had no enforceable contract with Pepsi.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.